WALTER MONK et al., Plaintiffs-Appellants, v. PHILLIP KNIERIM et al., Defendants-Appellees and Third-Party Plaintiffs (Prairie Design Builders, Inc., et al., Defendants; Popko Insulation, Inc., Third-Party Defendant).

Second District    No. 2—93—0750

Opinion filed August 23, 1994.

146

GEIGER, J., concurring in part and dissenting in part.

James H. Porn, of Law Offices of James H. Porn, and Michael W. Rathsack, both of Chicago, for appellants.

James S. Jendryk, of Querrey & Harrow, Ltd., of Wheaton, and Michael Resis and Paul J. Sarauskas, both of Querrey & Harrow, Ltd., of Chicago, for appellees.

JUSTICE COLWELL delivered the opinion of the court:

This action was brought pursuant to the Structural Work Act (the Act) (740 ILCS 150/1 *et seq.* (West 1992)). The plaintiffs, Walter Monk (Monk or the plaintiff) and Barbara Monk, seek to recover from the defendants, Phillip Knierim and Windham Homes, Inc., and certain other defendants, for injuries sustained when Monk, while standing and working on a floor at a residential construction site, turned to cross the floor, stepped on a board partially covering an opening in the floor, and fell down into the opening. The trial court granted the summary judgment motion of the defendants, Phillip Knierim and Windham Homes, Inc., finding that neither section 1 nor section 7 of the Act applies to the facts of this case. The trial court specifically found that there was no evidence that the basement stairway cut, into which Monk fell, was used by "elevating machines or hoisting apparatus" within the meaning of section 7 of the Act. The court further found that the floor upon which Monk was standing

and walking at the time of his injury was not "scaffolding" or a "support" as defined in the Act.

The plaintiffs appeal from the order granting summary judgment. On appeal, the plaintiffs argue that the trial court's order granting the defendants' motion for summary judgment should be reversed because Monk was using the floor for support at the time of the occurrence, and defendants owed him a duty under the Act to furnish him with a safe means of support. We reverse in part and affirm in part.

The facts in this case are undisputed. Monk was on the jobsite to perform insulating duties for his employer, Popko Insulation. On March 1, 1990, the plaintiff began work at 8 a.m. at a three-story house under construction on the side of a hill. One would walk into the basement living area from the rear of the house and then walk up to the first floor. The first floor was unfinished and only rough plywood had been laid down. Drywall had not yet been put up. The occurrence took place at approximately 2:30 p.m.

The first floor had an open area about 6 to 7 feet long and 3 to $3^1/_2$ feet wide. This opening was for a stairway located between the family room and dining room of the house. This opening was used to get materials into the basement at the time of the occurrence. Stairs had not been installed in the opening.

Monk was standing near the opening feeding insulation material to a co-worker who was standing on a scaffold which was sitting on the floor. Monk backed up with the intention of going to the garage to obtain more insulation. There was a board sitting across one corner of the opening which covered that corner of the hole. The board was a 2 by 6 or 2 by 8 and was a couple of feet long. Monk was aware of the opening since earlier in the day he and a co-worker covered the opening with plastic wrap to keep the cold air out. As Monk turned or began to pivot, his right foot left the board and he began to fall through the opening. The board moved or shifted as he stepped on it. The board was not nailed down and Monk did not know who put it in place. Monk fell 12 feet to the basement floor below.

Monk and his then wife filed suit against defendants, both under the Structural Work Act and for negligence. Defendants Knierim and Windham Homes, Inc., filed a motion for summary judgment as to the Structural Work Act counts. The complaint was amended after the motion was filed, but the motion stood as to the amended complaint. The defendants' motion addressed counts I and V of that complaint. The motion contended that the Act did not apply because the plaintiff was not using the floor as a support. The depositions of the plaintiff and of his supervisor were filed, as were the affidavits of the

plaintiff and the plaintiffs' expert witness. The plaintiffs' expert witness opined that the floor did not furnish adequate support, given the existence of the opening and that the opening was used as a hoistway.

The trial court heard argument on February 23, 1993, and entered judgment in favor of defendants Knierim and Windham on the Structural Work Act counts on March 2, 1993. On May 21, 1993, an order was entered making the summary judgment final and appealable. It is from the order of March 2, 1993, granting the defendants' motion for summary judgment, that the plaintiff appeals.

In its March 2 order, the trial court noted that the plaintiff was arguably using the floor as a support when he was handing up materials moments before the fall, but was only using the floor as a pathway when he turned to walk and get materials. The court found in part:

"The court is aware of authority which instructs that workmen injured while using a floor as a pathway simply going from place to place will not come under the protection of the Act; the Court is also aware of authority which holds that under certain circumstances, a sub-floor, or partially completed floor is considered a scaffold or temporary support, and does fall within the Act's protection. The key in deciding whether the Act applies is found by determining the intended use of the device at the time of the injury, and in determining whether that work-related use was a 'highly dangerous activity', or 'extra hazardous work', and of a type intended of legislative protection.

Seconds before his fall, Plaintiff was arguable [sic] using the floor as a 'support' while handing insulation up to his co-worker on a scaffold; at the time of the fall, plaintiff was using the floor as a pathway to obtain more insulation materials from another part of the job site.

Although it is conceded that this use is separated from the work-related use by mere seconds and only a few feet, a rational basis to draw the line must be maintained; it is this Court's view that the *actual* intended use of the device at the *instant* of the injury is a threshold determination which must be made. Only if the actual *use* is found to be work-related would the question be raised whether it met the 'highly dangerous activity' criteria of conduct intended to be protected under the act. In this case, the Court finds the floor was being used simply as a floor and the Act does not apply.

Therefore, Defendant, Phillip Knierim and Windham Home, Inc.'s Motion for Partial Summary Judgment as to Count I and Count IV is granted against Plaintiff's [sic] Walter Monk and Barbara Monk." (Emphasis in original.)

On appeal, the plaintiffs argue that the trial court's order granting the defendants' motion for summary judgment should be reversed because the plywood floor Monk was walking on was a support within the meaning of the Act.

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421.

> "[A]lthough the use of summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation. [Citation.] Summary judgment is, therefore, proper only when the resolution of a case hinges on a question of law and the moving party's right to judgment is clear and free from doubt. [Citation.] In considering a motion for summary judgment, the court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party. [Citation.] If the court finds that the record contains any material issues of genuine fact, the motion for summary judgment must be denied. A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts. [Citation.] As in all cases involving summary judgment, we review the evidence in the record *de novo*. [Citation.]" *In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410-11.

The Act provides in pertinent part:

> "§ 1. All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon.
>
> * * *
>
> § 7. If elevating machines or hoisting apparatus are used within a building in the course of construction for the purpose of lifting materials to be used in such construction, the contractors or owners shall cause the shafts or openings in each floor to be enclosed or fenced in on all sides by substantial barrier or railing at least eight feet in height. Any hoisting machine or engine used in

such building construction shall, where practicable, be set up or placed on the ground, and where it is necessary in the construction of such building to place such hoisting machine or engine on some floor above the ground floor, such machine or engine must be properly and securely supported with a foundation capable of safely sustaining twice the weight of such machine or engine." 740 ILCS 150/1, 7 (West 1992).

■ We first address that portion of the trial court's order which relates to section 7 of the Act. As the trial court found, plaintiffs failed to show that prior to or at the time of the occurrence the opening in the floor was used for purposes covered by section 7 of the Act. The only evidence as to this portion of the claim was at best speculative. No evidence of any use of the opening in the floor within the meaning of section 7 was offered by plaintiff. Accordingly, that portion of the summary judgment order dealing with section 7 of the Act was appropriate and we affirm that portion of the order.

We turn next to the plaintiffs' claim under section 1 of the Act. The Act is construed liberally in order to provide protection to persons engaged in extrahazardous occupations of working in and about construction sites. (*Vuletich*, 117 Ill. 2d at 421-22.) However, the Act was not intended to, nor has it been interpreted to, cover any and all construction activities. (*Vuletich*, 117 Ill. 2d at 422.) Therefore, certain things have been held not to be "supports" within the contemplation of the Act. *Vuletich*, 117 Ill. 2d at 422.

To sustain a cause of action under the Act, a plaintiff must establish, *inter alia*, that he was using a scaffold or other mechanical device that fits within the definitions and intended coverage of the Act and that the scaffold or device was unsafe. (*Ralls v. Village of Glendale Heights* (1992), 233 Ill. App. 3d 147, 152.) In the instant case, the trial court did not reach the question of whether the floor was unsafe, since it determined as a matter of law that the plaintiff was not using the floor as a "support" within the intended coverage of the Act. We address only the trial court's conclusion of law.

■ Whether a device is a "scaffold," "support," or other "mechanical device" governed by the Act is a matter of statutory construction and therefore a question of law for the court to determine. (*Vuletich*, 117 Ill. 2d at 421.) The established rule, stated by the Illinois Supreme Court in *Vuletich*, is that a floor is not a "support" within the meaning of the Act when it is being used merely as a walkway, but if a worker relies on a partially completed floor for support in the performance of some hazardous activity or as a working platform, he may recover. (117 Ill. 2d at 423.) We recently reiterated this rule in *Osborne v. Tarwater* (1994), 259 Ill. App. 3d 703, 706-09, a case cited by defendants pursuant to a motion for leave to cite additional authority.

In *Vuletich*, our supreme court affirmed summary judgment in favor of a defendant on the issue of whether a stairway was "a support within the meaning of the Act." (*Vuletich*, 117 Ill. 2d at 425.) The plaintiff in that case ascended a set of temporary wooden steps to a trailer where he was returning a shovel and broom that he had used to clean an area where workers were repairing a furnace. (*Vuletich*, 117 Ill. 2d at 420.) The plaintiff contended that the stairs were used as a support because workers ascended and descended the steps in order to gain access to their tools. (*Vuletich*, 117 Ill. 2d at 422.) The court rejected this argument, stating:

> "The stairs were but a pathway providing ingress and egress to and from the trailer wherein tools were stored. If the stairs had provided support for the plaintiff in the performance of some hazardous activity, or if he had used them as a working platform, then *** a different situation might prevail." *Vuletich*, 117 Ill. 2d at 423.

In *Tarwater*, the plaintiff sought to recover for injuries sustained when he walked on a floor and fell through an insulation-covered hole at a residential construction site. (*Tarwater*, 259 Ill. App. 3d 703.) The plaintiff admitted that he had no intention of performing any construction work in the area where he fell and that he was merely walking through the area at the time of the accident. (*Tarwater*, 259 Ill. App. 3d at 709.) We concluded that the plaintiff was using the floor as a pathway and not as a "support" within the meaning of the Act. *Tarwater*, 259 Ill. App. 3d at 709, citing *Vuletich*, 117 Ill. 2d at 423.

■ In the present case, unlike in *Tarwater*, the plaintiff was using the floor both as a "support" within the meaning of the Act (see *Vuletich*, 117 Ill. 2d at 423 (and cases cited therein) (if a worker relies on a partially completed floor for support as a working platform, he may recover); accord *Tarwater*, 259 Ill. App. 3d at 706-09) and as a pathway. When handing insulation up to his co-worker, Monk used the floor as a support; when going to get more insulation, he used the floor as a pathway. The accident apparently occurred during a transition between the two uses of the floor. According to Monk's deposition, he backed up while talking to his co-worker, to whom he had just handed insulation. Placing his foot to turn to go for more insulation, he stepped on or tripped on a piece of wood covering the corner of the stairway cut.

While conceding that the two uses of the floor were separated by mere seconds and only a few feet, the trial court concluded that a "threshold determination" of the actual use of the floor at the instant of the injury was required in order to maintain a rational basis for

drawing the line between using a floor as a support and as a pathway. We believe the joint uses of the floor in this instance are inseparable.

The intended use of the floor at the time of the injury must be determined. (*Vuletich*, 117 Ill. 2d at 422; accord *Tarwater*, 259 Ill. App. 3d at 706-09.) When the accident in the present case occurred, it was intended that the floor be used both as a support and as a pathway. It seems apparent to us that Monk might as easily have fallen into the hole in the floor while in the process of handing insulation up to his co-worker as when turning to go to get more. Elevating the status of one use of the floor over the other strikes us as arbitrary and illogical.

Our holding in *Tarwater* did not contemplate a situation where a worker contemporaneously uses a floor as a work-related support and as a pathway. We decline to rule now, as a matter of law, that a worker who uses a floor as a support within the meaning of the Act may not recover simply because he also uses that floor as a pathway. Such a strict construction would, we believe, destroy the intended protection of the Act. It is a question for the jury whether the plaintiff can, under these facts, establish a violation of section 1 of the Act.

For the foregoing reasons, we conclude that the defendants were not entitled to judgment as a matter of law on the portion of their summary judgment motion dealing with section 1 of the Act. We reverse that portion of the circuit court's order and remand for further proceedings. The portion of the order dealing with section 7 of the Act is affirmed.

Affirmed in part; reversed in part and remanded.

BOWMAN, J., concurs.

JUSTICE GEIGER, concurring in part and dissenting in part:

I concur in the majority's opinion insofar as it affirms that portion of the order in which the trial court found that there was no evidence that the hole into which Monk fell was used by "elevating machines or hoisting apparatus" within the meaning of section 7 of the Act. However, I respectfully dissent from the majority's opinion insofar as it reversed that portion of the order in which the trial court found that at the time of his injury the floor upon which Monk was walking was being used merely as a pathway, and not as a "support" within the meaning of section 1 of the Act.

As the majority notes, the question of whether the floor was being used as a "support" within the meaning of the Act is a matter of statutory construction and therefore a question of law for the court

to determine. (See *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421.) In order to determine whether a device qualifies as a "support" within the meaning of the Act, a court must determine what the intended use of the device in question was *at the time of the injury.* (See *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 297.) Under *Vuletich*, a floor is not a "support" within the meaning of the Act when it is being used merely as a walkway, but if a worker relies on a partially completed floor for support in the performance of some hazardous activity or as a working platform, he may recover. See *Vuletich*, 117 Ill. 2d at 423.

In the present case, I agree with the majority, and with the trial court, that Monk had been using the floor as a "support" prior to his accident when he was handing construction materials to his co-worker. However, I agree with the trial court, and disagree with the majority, in that I believe that, in order to maintain a rational basis for deciding what the intended use of the device was *at the time of the injury*, the court must first decide what the actual intended use of the device was at the *instant* of the injury. *At the time of the injury,* when Monk turned to walk outside for more insulation, I would find that he was using the floor merely as a walkway, and not as a "support" within the meaning of the Act.

The majority attempts to distinguish this court's decision in *Osborne v. Tarwater* (1994), 259 Ill. App. 3d 703, by stating that in the present case, unlike in *Tarwater*, Monk was using the floor both as a "support" within the meaning of the Act and as a pathway and that the accident apparently occurred during a transition between the two uses of the floor. However, the facts indicate that *at the time of the injury* Monk had finished handing insulation up to his co-worker, he had backed up, and he was turning to walk outside for more insulation when he stepped on, or tripped on, a piece of debris covering a corner of the hole in the floor and fell through the hole. In *Tarwater*, at the time of his injury, the plaintiff was walking across the floor intending to go to the second floor to pick up electrical cords and tools before he went home when he stepped on a hole covered by insulation and fell through the hole. (*Tarwater*, 259 Ill. App. 3d at 705.) In *Tarwater*, this court found that *at the time of the injury* the plaintiff was using the floor merely as a pathway, and not as a "support" within the meaning of the Act. *Tarwater*, 259 Ill. App. 3d at 709.

Similarly, in *Gannon v. Commonwealth Edison Co.* (1989), 182 Ill. App. 3d 228, 229-30, the plaintiff was a pipe fitter who was carrying beams from one area to another for stockpiling. As Gannon was carrying a beam, he slipped on a greasy substance on the floor and

154

fell. (*Gannon*, 182 Ill. App. 3d at 230.) Even though the plaintiff in *Gannon* was actually carrying construction materials at the time of his injury, the court found that he was using the floor as a pathway and not as a "support" within the meaning of the Act. *Gannon*, 182 Ill. App. 3d at 233.

I disagree with the majority in that I believe that the facts in the present case are not distinguishable from the facts of *Tarwater* and *Gannon*. Therefore, I would find that *at the time of the injury* the plaintiff was using the floor as a pathway and not as a "support" within the meaning of the Act. Consequently, I would affirm the trial court's order granting summary judgment in favor of the defendants on the counts brought under the Act.