CYNTHIA FANCHER, Indiv. and as Special Adm'r of the Estate of Kenneth E. Fancher, Deceased, Plaintiff-Appellant, v. CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Defendant-Appellee.

Fifth District    No. 5—95—0311

Opinion filed April 18, 1996.

Bernard L. Chase and Dana L. Palmer, both of Law Offices of Bernard L. Chase, of Chicago, for appellant.

R. Gerald Barris and Michael T. Kokal, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

Plaintiff, Cynthia Fancher, filed this action in the Jasper County circuit court individually and as the special administrator of the estate of her deceased husband, Kenneth E. Fancher (Fancher). The trial court dismissed plaintiff's third amended complaint with prejudice pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 1992)). On appeal, plaintiff argues that the trial court abused its discretion in dismissing the complaint. For reasons we will more fully explain, we reverse and remand.

The general facts about how the accident occurred are not disputed. Fancher was an "operator" or foreman for Effingham Sewer Services (Effingham) at the time of the accident. Central Illinois Public Service Company (CIPS) contracted to have Effingham clean out the fly ash silo at its Newton Power Station. The fly ash silo is an extremely large silo used by CIPS to collect fly ash, a byproduct of

the power process employed at the Newton power station. Before the silo can be cleaned, CIPS processes out as much of the fly ash as it can, evidently removing the ash on conveyor belts before it opens the facility for cleaning.

After CIPS opened the door of the silo, located on the side and at the bottom of the silo, Effingham vacuumed out the silo with large vacuum hoses. Normally, Effingham would have used a "gravity pull" method before vacuuming the silo, but according to Charles Stigers, Effingham's owner, CIPS would not allow Effingham to use the gravity pull method prior to Fancher's death, even though Stigers told CIPS officials Robert Butler and Jim Williams that the gravity pull method was "safer and quicker." Fancher was killed after he entered the silo to clean it from the inside, when fly ash remaining on the walls of the silo above Fancher's head fell on top of him and suffocated him.

Plaintiff's third amended complaint alleged that on May 24, 1992, Fancher was employed by Effingham; that CIPS hired Effingham to clean the fly ash silo at its Newton Power Station in Newton, Illinois; that Fancher exercised due care and caution for his own safety; and that "it was the duty of the defendant, CIPS, to safely operate and maintain said 'fly ash silo' in a manner so as to not place the decedent in danger of injury." Plaintiff alleged in the third amended complaint 16 separate categories of negligence on the part of CIPS, including the allegation that CIPS "[c]arelessly and negligently ordered the decedent and other agents of Effingham Sewer to not use the 'gravity pull method' of cleaning the 'fly ash silo' despite having the knowledge that the 'gravity pull method' was the safest way to clean the 'fly ash silo.' " Additionally, the complaint alleged that Fancher was killed as the direct and proximate result of one or more of defendant's negligent acts. The third amended complaint consisted of two counts, the wrongful death count and a claim for loss of consortium by Fancher's wife, Cynthia.

CIPS filed a motion to dismiss plaintiff's third amended complaint pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1992)). Several months later, CIPS filed an "Index" to the documents it was filing in support of its motion to dismiss, now declaring that the motion was brought pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 1992)). In the alternative, CIPS asked the court to enter summary judgment in its favor. In its memorandum of law in support of the various motions, CIPS argued: "Plaintiff has not alleged that Defendant CIPS had meaningful control over the fly ash removal site. In the alternative, because Plaintiff now makes unsubstantiated claims that CIPS'[s] employees

instructed Effingham not to use the gravity pull method, Defendant moves for dismissal under [section 2—619] or for summary judgment to refute these now unsubstantiated allegations."

The trial court granted the motion to dismiss, "under section 2—619(9) [*sic*] of the Civil Practice Act [*sic*]." The court stated its reasons for granting the motion to dismiss as:

> "In three attempts, Plaintiff has failed to plead that CIPS retained 'control' over Effingham Sewer Services' work[,] which is a necessary prerequisite to CIPS['s] liability for Mr. Fancher's death. [The] limitation on Effingham Sewer's work method was that the 'gravity flow' method not be used before vacuuming the fly ash silo. The gravity flow procedure would then have to be used to complete the job. Here, vacuuming had already been in progress for one entire shift before Mr. Fancher was killed. *Some* fly ash, therefore, had already been removed prior to the shift during which Mr. Fancher and his crew began their work.
>
> This selection of the method to be used, at least where, as here, it does not result in increased risk to the contractors' employees, is not 'control' for purposes of predicating liability." (Emphasis in original.)

■ On appeal, plaintiff argues that the trial court abused its discretion in dismissing the complaint. We agree. Generally, the trial court should not grant an involuntary dismissal of a complaint under section 2—619 unless it clearly appears that no set of facts can be proved that will entitle plaintiff to relief. *Estate of Herington v. County of Woodford*, 250 Ill. App. 3d 870 (1993). Under section 2—619, a complaint is subject to involuntary dismissal if:

> "(9) *** the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1992).

" 'Affirmative matter' within the meaning of section 2—619(a)(9) [citation] is something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact *** contained in or inferred from the complaint. It must, however, be something more than evidence offered to refute a well-pleaded fact in the complaint, for, as in the case of a motion under section 2—615 [citation], such well-pleaded facts must be taken as true for the purposes of a motion to dismiss under section 2—619(a)(9) [citation]." *Longust v. Peabody Coal Co.*, 151 Ill. App. 3d 754, 757 (1986).

Thus, CIPS's argument that it owed no duty to Fancher was properly considered by the court as a motion for involuntary dismissal of the complaint. To adequately state a negligence cause of action, a plaintiff must set forth sufficient facts to show that the defen-

dant owed a duty to plaintiff, that the defendant breached that duty, and that an injury was proximately caused by that breach. *Ward v. K mart Corp.*, 136 Ill. 2d 132 (1990). The question of whether defendant owes any duty to plaintiff and, if so, the scope of that duty, is a question of law for the trial court. *Ward*, 136 Ill. 2d at 140. The appropriate question in determining the existence of a duty is whether the defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff. *Ward*, 136 Ill. 2d at 140.

■ If CIPS owed no duty to Fancher, then clearly it could not breach any duty, and hence there could be no negligence on the part of CIPS. *American National Bank & Trust Co. v. National Advertising Co.*, 149 Ill. 2d 14 (1992). Where the court properly determines that the defendant owes no duty to plaintiff, the trial court may properly dismiss the complaint on a motion for involuntary dismissal. *Wood v. Village of Grayslake*, 229 Ill. App. 3d 343 (1992). The decision to grant or deny a motion for involuntary dismissal is a matter within the sound discretion of the trial court, and that decision will not be overturned on appeal absent an abuse of that discretion. *Dick v. Peoples Mid-Illinois Corp.*, 242 Ill. App. 3d 297 (1993). Nevertheless, where the motion is granted on a disputed question of law, as here, the court of review will consider the issue *de novo. American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919 (1994).

■ Thus, the initial question we decide is whether plaintiff adequately alleged a duty on the part of CIPS toward Fancher. We find that plaintiff sufficiently alleged a duty to survive a motion for involuntary dismissal. Under the Premises Liability Act (740 ILCS 130/1 *et seq.* (West 1992)), an owner of land, such as CIPS, owes entrants on that land, such as Fancher and other employees of Effingham, a duty "of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." 740 ILCS 130/2 (West 1992). Our supreme court has ruled that sections 343 and 343A of the Restatement (Second) of Torts (Restatement (Second) of Torts §§ 343, 343A (1965)) accurately set forth the duty of possessors and owners of land to their invitees, such as Fancher. *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430 (1990); *Ward*, 136 Ill. 2d 132.

> "Generally, under section 343, as well as under common law, a possessor of land owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition. [Citation.] Section 343A provides that a possessor of land cannot be liable for an invitee's injury if the condition of the land which caused the

injury was known or obvious to the invitee. [Citation.] Section 343A, however, contains an exception: Even if the condition of the land was obvious to the invitee, a possessor of land may be liable if the possessor should have anticipated the harm." *Deibert*, 141 Ill. 2d at 437.

The *Deibert* case discusses comment *f* to section 343A, which states:

"There are *** cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. *Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.* In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. [Citation.] It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." (Emphasis added.) Restatement (Second) of Torts § 343A Comment *f*, at 220 (1965).

We now turn to the question we must decide, which is, did plaintiff's decedent, Fancher, stand in such a relationship to defendant, CIPS, that the law imposes upon CIPS an obligation of reasonable conduct for the benefit of Fancher? In deciding whether and to what extent a duty of care extends from one party to another, the relevant and necessary considerations are the foreseeability and likelihood of injury, the magnitude of the burden of guarding against the injury, the consequences of placing that burden on the defendant, and the possible seriousness of the injury. *Deibert*, 141 Ill. 2d at 438. We find that the application of these factors to the circumstances of the case at bar demonstrates that the law imposes an obligation of reasonable conduct upon CIPS for the benefit of Fancher and others similarly situated.

■ It was clearly and reasonably foreseeable to CIPS, *i.e.*, CIPS

knew or should have known, that Effingham employees such as Fancher would enter the silo regardless of the obvious danger of doing so, because that was the usual and customary way to finish cleaning a fly ash silo. According to two co-workers of Fancher, it is common practice when cleaning out a fly ash silo to enter inside to finish cleaning it out after all other methods have been tried. Jim Bonebrake, who was working with Fancher at the time of his death, testified that after using all other methods to remove as much fly ash as possible, Effingham employees regularly went inside the silo to finish cleaning it out, because "[t]hat's the only way to get it out." When this customary practice is combined with the uncontested fact that CIPS ordered Effingham not to use the gravity pull method, which it normally used, it appears that this is a situation in which CIPS had "reason to expect that the invitee [Fancher or some other Effingham employee] will proceed to encounter the known or obvious danger" because, to Fancher, "the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A Comment f, at 220 (1965).

At a minimum, it was clearly and reasonably foreseeable that Effingham employees such as Fancher would choose to go inside to clean out the silo rather than leave the job unfinished. See Restatement (Second) of Torts § 343A, Illustration 5 to Comment f, at 221 (1965). The fact that Fancher was probably aware of the danger of going inside the silo goes to the factual question of his contributory negligence but cannot relieve CIPS of its duty to act reasonably under the circumstances. Additionally, whether CIPS breached its duty of care by ordering Effingham not to use the gravity pull method or by any other allegation of the complaint and whether any breach of duty by CIPS proximately caused Fancher's death are all factual determinations for the jury and are not properly decided by the court in a motion for involuntary dismissal.

Additionally, the likelihood of injury to Fancher was substantial, especially when considered in light of the common practice of Effingham employees to enter the silo regardless of whether fly ash remained on the walls above their heads. Given the undisputed fact that Effingham had been cleaning the fly ash silo at the Newton power station for CIPS since 1986, it seems reasonable, foreseeable, and likely that Fancher would be injured under these circumstances.

As for the magnitude of the burden of guarding against the injury, the evidence presented to the trial court indicates there were several ways for CIPS to fairly easily guard against this accident. First, the evidence suggests that CIPS might have been able to process out more fly ash before opening the silo to Effingham for clean-

538

ing. Second, after the accident, CIPS cut several additional doors in the silo to allow Effingham greater access to the silo from the outside. Likewise, after the accident, CIPS used dynamite to remove the hardened fly ash that would not fall out of the silo using the other methods of removal. There is nothing in the record to suggest that any of these measures could not have been used before Fancher was killed. Third, CIPS could have allowed Effingham to make its own decision about how to clean out the silo, whether through the gravity pull method, the vacuum method, or otherwise. We do not make any decision about whether CIPS should have taken any of these measures or how effective they would have been to guard against Fancher's death, but we list them in order to illustrate that the burden of guarding against Fancher's death was not insurmountable or excessively difficult. Therefore, the consequences of placing that burden upon CIPS is not unreasonable when compared to the seriousness of Fancher's death. Accordingly, we hold that plaintiff's third amended complaint sufficiently alleges the duty owed by CIPS to Fancher to survive a motion for involuntary dismissal.

██ █ We must, however, consider CIPS's argument that it did not owe a duty to Fancher because he worked for Effingham, an independent contractor, and CIPS did not control the manner in which Effingham employees did their work. CIPS contends that under section 414 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 414 (1965)), the trial court properly dismissed plaintiff's complaint. Section 414 provides:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414, at 387 (1965).

CIPS asserts that it did not retain sufficient control over Effingham's work to subject it to liability under the circumstances of this case, citing comment *c* to section 414, which states:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. *** There must be such a retention of the right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414 Comment *c*, at 388 (1965).

CIPS's argument fails for two reasons. First, contrary to CIPS's assertion, CIPS "retained at least some degree of control over the manner in which" Effingham and Fancher did their work. Effingham

was not entirely free to do its work as it chose. Effingham's owner and two of its employees testified that normally, when cleaning out fly ash silos, it used the gravity pull method before using any other method, as that was the safest and quickest way to the get the greatest amount of fly ash out of the silo prior to going inside to clean it. The secondary question of whether Fancher would have been killed by falling fly ash even if CIPS had allowed Effingham to use its customary gravity pull method goes to the issue of proximate cause, which is a question for the jury, not a matter of law for the court to decide on a motion for involuntary dismissal.

Second, when presented with a question of the duty of care owed by an owner of premises to an independent contractor employed by the owner, section 414 of the Restatement (Second) of Torts should be read in harmony with the Premises Liability Act and sections 343 and 343A of the Restatement (Second) of Torts. CIPS cites two cases applying section 414, *Bezan v. Chrysler Motors Corp.*, 263 Ill. App. 3d 858 (1994), and *Fris v. Personal Products Co.*, 255 Ill. App. 3d 916 (1994). We find both of these cases distinguishable and not controlling.

In *Bezan*, the appellate court found that Chrysler Motors Corporation, the owner of the plant in which plaintiff was injured, owed no duty to plaintiff, who was employed by a subcontractor, because Chrysler had no control over the manner in which the subcontractor did its work and because Chrysler had no notice of the dangerous work method used by the plaintiff's employer. *Bezan*, 263 Ill. App. 3d at 864. Thus, *Bezan* is distinguishable: in the case at bar, CIPS not only knew or should have known of the dangerous work practice of Effingham, going into the fly ash silo while ash remained on the walls above the workers' heads, but CIPS also directed Effingham to forego using the allegedly safest method to remove the fly ash prior to going inside the silo. The combination of CIPS's knowledge and its exercise of control over how Effingham did its work distinguishes our case from *Bezan*.

In *Fris*, the defendant was the owner of the premises upon which the plaintiff was injured. The defendant hired plaintiff's employer as a subcontractor and retained certain rights of supervision. The court held that although the defendant "retained the right to require that work be done in a safe manner, this general authority cannot be viewed as creating such a right of supervision as to have prevented [the subcontractor] from doing routine work in its own way." *Fris*, 255 Ill. App. 3d at 924. The appellate court reversed the trial court's denial of defendant's motion for a judgment *non obstante verdicto*

(*n.o.v.*), on the basis that there was no evidence that the accident in which plaintiff was injured involved anything more than "a routine and incidental aspect" of the plaintiff's job and that, as a matter of law, defendant had no duty toward plaintiff under those circumstances. *Fris*, 255 Ill. App. 3d at 924.

*Fris* is distinguishable in that it involved a case which was allowed to go to the jury, but in which the appellate court found that plaintiff did not present any evidence at trial of the type of control necessary to assign any duty to defendant as a matter of law. In the case at bar, plaintiff has sufficiently alleged duty to allow the case to go before a jury. If plaintiff does not present evidence of any of the elements of the two pending causes of action, then CIPS will be able to move for a directed verdict or a judgment *n.o.v.*, depending on the facts presented. However, *Fris* does not provide the authority that CIPS seeks in order to have this complaint dismissed before it ever reaches the jury.

Finally, we note that our supreme court has held that sections 343 and 343A apply to situations such as that presented herein. *Deibert*, 141 Ill. 2d at 434. In *Deibert*, the plaintiff, an employee of a subcontractor, sued the general contractor on a claim of negligence. The supreme court held that the defendant owed plaintiff a duty of care pursuant to section 343A. *Deibert*, 141 Ill. 2d at 438; Restatement (Second) of Torts § 343A (1965). Thus, the trial court in the case at bar was required to apply the rules set forth in section 343A to the facts of the case at bar in determining whether CIPS owed any duty to plaintiff. While section 414 of the Restatement (Second) of Torts may provide guidance to the court in determining the legal question of the duty owed by a defendant contractor and owner or possessor of premises to an employee of a subcontractor, under the supreme court's ruling in *Deibert*, section 414 must be read in light of the requirements of section 343A. *Deibert*, 141 Ill. 2d at 434; Restatement (Second) of Torts §§ 343A, 414 (1965).

We note that plaintiff argued that CIPS owed Fancher a duty of reasonable care under section 343A in her response to CIPS's motion to dismiss plaintiff's second amended complaint, which the trial court granted. Therefore, the trial court was put on notice to consider the question of CIPS's duty under that section of the Restatement. The trial court erred in not applying section 343A to the facts of this case and in granting the motion for involuntary dismissal. Accordingly, we reverse the trial court's dismissal of plaintiff's third amended

complaint and remand for further proceedings consistent with this opinion.

Reversed and remanded.

WELCH and GOLDENHERSH, JJ., concur.