FIFTH DIVISION

Filed: 12/05/97

Nos. 1-96-269 & 1-96-1733 (cons.)

LEE CIHON, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellant/Cross-Appellee, ) COOK COUNTY

)

v. ) 

)

CARGILL, INCORPORATED, a foreign )

corporation, ) 

) 

Defendant-Appellee/Cross-Appellant, ) 

---------------------------------------------)

LEE CIHON, )

)

Plaintiff-Appellant/Cross-Appellee, )

)

v. )

)

CARGILL, INCORPORATED, a foreign )

corporation, )

)

Defendant-Appellee/Cross-Appellant, )

)

(John Ambrose, ) HONORABLE

) CYRIL J. WATSON,

Contemnor-Appellant.) ) JUDGE PRESIDING.

___________________________________________________________________

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Lee Cihon, filed a two-count complaint against the defendant Cargill, Incorporated (Cargill), alleging common law negligence and violations of the Structural Work Act.  A jury returned a verdict in favor of Cihon and against Cargill on both counts and assessed damages totaling $780,000.  However, the jury also found Cihon 35% comparatively negligent and reduced the damages to $507,000 on the negligence count.  The trial judge granted Cargill's motion for a judgment 
n.o.v.
 on both counts.  Cihon appealed that judgment and Cargill cross-appealed to preserve its rights to certain setoffs (No. 1-96-1733).  Cihon's counsel appealed from a judgment finding him in contempt (No. 1-96-269).  

In February 1991, Cihon, an electrician in the construction trade for 29 years, was working at the construction site of a new tank farm at the Cargill premises in Chicago Heights.  Cargill had hired Glen Oaks Electric (Glen Oaks) and M & W Contractors (M & W) to perform the work.  Cihon was a general foreman for Glen Oaks.

Cargill's tank farm contained several storage tanks in rows of two, each resting on separate concrete "pads" that were anywhere from 16 to 24 inches high.  A concrete wall had been built around the perimeter of the tanks to contain spills.  The tanks were clean, empty, and dry at the time of the incident.  The floor of the tank farm pitched downward from north to south--the north wall being approximately 31 inches high and the south wall approximately 48 inches high.  The south end of the tank farm, the area where Cihon was working, contained a sump area which angled 6 to 8 inches below the floor of the tank farm.  There was a liquid that appeared to be water inside the sump area at the time of Cihon's accident.   On February 21, 1991, Cihon had obtained a verbal welding permit from Paul Wenger, an engineer at Cargill.  Cihon intended to "cad weld" a copper cable to a piece of steel on the side of each of the storage tanks in order to "ground" them if they were struck by lightning.  According to Cihon, the cad welding process required the use of an electric grinder to clean any burrs off the cable.  Cihon would then ignite gunpowder in a mold to cause it to weld, and this required a clean, dry surface.  

Sometime before Cihon's accident, the construction workers at the site had placed a 2 x 10 or 2 x 14 inch plank which ran from the south wall of the tank farm to the concrete pad in the southwest corner.  The testimony indicates that the plank was anywhere from eight to fourteen feet long.  Cihon's coworker, Edward Hunt, testified that various workers at the site had used the plank to enter the tank farm.  Hunt believed that the plank had been used in that manner for a few weeks.  The plank sloped downward from the south wall to the top of the tank pad and ended at least two feet from the spot where Cihon intended to cad weld the cable to the metal flap on the tank.  

On the day of the occurrence, Cihon walked across the plank into the tank farm to look at the flap where the welding was to be done.  He set down the mold on the concrete pad and exited the tank farm via the plank.  While Hunt rolled out an extension cord to get power to the tank farm for the electric grinder, Cihon went to a trailer to get supplies for the cad welding.  As Cihon again walked down the plank with the cad welding equipment in his hands, the plank "tipped" and he fell to the floor of the tank farm.  Hunt found Cihon lying on his back partly in the water in the sump area and about three or four feet north of the south wall.  Cihon testified that he passed out for awhile and awakened in extreme pain.  He sustained serious injury to a ligament in his knee. 

On July 1, 1991, Cihon filed a two-count complaint against Cargill and M & W, setting forth claims under the Structural Work Act and common law negligence.  Prior to trial, Cargill filed a counterclaim against M & W and a third-party complaint against Glen Oaks, both seeking contribution.  Glen Oaks waived its workers compensation lien of $177,122.06, and obtained a dismissal.  M & W settled with Cihon for $240,000 and was dismissed after the judge made a finding that its settlement with Cihon was in good faith.  

The trial commenced on October 23, 1995.  Cargill stipulated before trial that it had control of the premises and charge of the work, which effectively removed those issues from the case.  

At trial, Ellen Brady, plant superintendent of Cargill's Chicago Heights plant at the time of the accident, testified that she was responsible for the overall operations of the facility.  She said that Cargill relied on a permit system and contractor checklist to prevent unsafe practices.  According to Brady, Cargill's plant engineer, Paul Wenger, visited the tank farm two or three times a week and reported to her on the progress of the construction.  Brady testified that she or Wenger could stop the work if they saw something done in an unsafe manner.  She admitted that Cargill was responsible for providing a safe work site.

Brady said she had seen a plank running from the south wall of the tank farm to one of the tank pads and had observed workers using it to walk in and out of the tank farm.  She admitted that there was water in the sump area on the day of Cihon's accident and that it would have been Cargill's responsibility to remove it.   

Cihon's expert, Kenneth Yotz, testified that he was an expert in occupational and environmental health and safety and was a former regional director for the Occupational Safety and Heath Administration (OSHA).  Yotz opined that the plank here was unreasonably dangerous in that it violated OSHA standards, custom and practice in the industry, and the Structural Work Act.  Yotz also testified that, even if the fall distance did not require a handrail, OSHA still required the securing of the scaffold to prevent movement.  Yotz said that he had previously seen such planks used to provide a walking or working surface for workers or materials.  He opined that a plank used in the manner described here was not a safe practice because it was not secured, it was not erected by a competent person, it did not have guardrails, and the workers were not properly trained to recognize the hazard. 

Cargill's expert, Eugene Holland, a structural and consulting engineer in the construction industry, testified that the plank was not a scaffold since it served only as an access to the tank farm.  He opined that Cargill had no responsibilities for the direct supervision of Cihon's work, and that Cihon himself was in sole control of his work.  According to Holland, OSHA places safety responsibility on both employers and employees.  He concluded that Cihon would not have welded while standing on the plank because the plank did not extend to the area to be welded.  Holland said that the water in the sump area would have had no impact on cad welding, although he admitted he was unaware that Cihon would have been using an electric grinder. 

The jury returned verdicts in favor of Cihon and against Cargill with respect to both counts, awarding Cihon $780,000.  The jury found Cihon 35% negligent and, accordingly, reduced the damages on the negligence count to $507,000.

Cargill filed a motion for judgment 
n.o.v.
, arguing that it had no duty to Cihon under the negligence count and that the plank was not a support within the meaning of the Structural Work Act.  Cihon filed a post-trial motion arguing that there was insufficient evidence of comparative negligence and that the trial court's finding of direct criminal contempt against Cihon's counsel, John Ambrose, was erroneous.  Ambrose also filed a motion to vacate the trial court's finding of contempt.  The court denied Ambrose's motion on December 19, 1995, and he appealed (No. 1-96-269).

On April 19, 1996, the trial court entered an order granting a judgment 
n.o.v.
 in favor of Cargill and against Cihon on both counts.  Cihon appealed that order (No. 1-96-1733), and this court consolidated the appeal with appeal No. 1-96-269.  

We first address appeal No. 1-96-1733.  A judgment 
n.o.v.
 should be entered only in cases where all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 511, 229 N.E.2d 504 (1967).  A court does not weigh the evidence when ruling on a motion for a judgment 
n.o.v.
, nor is it concerned with the credibility of the witnesses; rather, it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion.  
Maple v. Gustafson
, 151 Ill. 2d 445, 453, 603 N.E.2d 508 (1992).  Therefore, "[t]he court has no right to enter a judgment 
n.o.v.
 if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome."  
Maple
, 151 Ill. 2d at 454. 

In order to recover on a negligence claim, the plaintiff must set out sufficient facts to establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff.  
Wojdyla v. City of Park Ridge
, 148 Ill. 2d 417, 421, 592 N.E.2d 1098 (1992).  Whether the defendant owes any duty to the plaintiff, and, if so, the scope of that duty, is a question of law.  
Ward v. K Mart Corp.
, 136 Ill. 2d 132, 140, 554 N.E.2d 223 (1990).

Under the Premises Liability Act (740 ILCS 130/1 
et
 
seq
. (West 1994)), an owner of land, such as Cargill, owes entrants on that land, such as Cihon and other employees of Glen Oaks, a duty "of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them."  740 ILCS 130/2 (West 1994).  Our supreme court has ruled that sections 343 and 343A of the Restatement (Second) of Torts accurately set forth the duty of possessors and owners of land to their invitees:

"Generally, under section 343, as well as under common law, a possessor of land owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition.  [Citation.]  Section 343A provides that a possessor of land cannot be liable for an invitee's injury if the condition of the land which caused the injury was known or obvious to the invitee.  [Citation.]  Section 343A, however, contains an exception:  Even if the condition of the land was obvious to the invitee, a possessor of land may be liable if the possessor should have anticipated the harm."  
Deibert v. Bauer Brothers Construction Co.
, 141 Ill. 2d 430, 437, 566 N.E.2d 239 (1990).

Comment f to section 343A further states in pertinent part:

"There are *** cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.  In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection.  This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise *** 
where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk
.  In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk.  [Citation.] It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." (Emphasis added.) Restatement (Second) of Torts sec. 343A comment f, at 220 (1965). 

Cargill maintains that it did not owe a duty to Cihon, citing as support section 414 of the Restatement:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."  Restatement (Second) of Torts sec. 414 (1965).  

Cargill argues that it did not retain sufficient control over Cihon's work to subject it to liability under the facts of this case.  Comment c to section 414 further states:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done.  It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.  Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail.  There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."  Restatement (Second) of Torts sec. 414, Comment c, at 388 (1965).

When presented with a question of the duty of care owed by an owner of premises to an independent contractor employed by the owner, 
section 414 of the Restatement (Second) of Torts is to be read in harmony with the Premises Liability Act and sections 343 and 343A of the Restatement (Second) of Torts.  See
 
Fancher v. CIPS
, 279 Ill. App. 3d 530, 539-40, 664 N.E.2d 692 (1996).  Thus, we must determine whether the amount of control exercised by Cargill, when considered in light of the foreseeability requirements of section 343A of the Restatement, was sufficient to support a duty to Cihon on the part of Cargill.

Cargill stipulated that it had control of the premises and charge of the work.  Cihon testified at trial that he requested welding or other work permits from Cargill on a daily basis.  Brady verified that Cargill could stop work it deemed unsafe.  Brady's testimony also established that Cargill knew that workers had been using the plank to access the tank farm.  She admitted that Cargill could have installed a ladder on the wall of the tank farm. 

Cihon testified that the plank was not secured and that it had "tipped," causing him to fall.  The evidence indicated that the plank, which was approximately four feet above the ground and only ten to fourteen inches wide, was not secured in any manner and had no guardrails or handrails.  There was also some evidence that the work area around the tank farm was muddy.  Thus, Cargill had reason to anticipate that a worker accessing the tank farm might slip off of the plank if his boots were muddy or might misstep if carrying materials at the time.  As previously indicated in section 343A of the Restatement, a possessor of land may, in some cases, owe its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition even if the condition of the land was obvious to the invitee.  See e.g. 
Deibert
, 141 Ill. 2d at 438.  We hold that Cargill owed such a duty in this instance. 

Whether Cargill breached its duty by failing to exercise reasonable care in protecting Cihon from harm was a question of fact for resolution by the jury.  
Ward
, 136 Ill. 2d at 156.  The jury could have found that Cargill did not exercise reasonable care because it did not take any action to prevent use of the plank as an access to the tank farm.  See 
Deibert
, 141 Ill. 2d at 442.  As Brady testified, it would have been feasible for Cargill to install a ladder in the tank farm.  The record is uncontroverted that Cargill failed to undertake any safety measures even though it was aware of the plank's use; therefore, there was sufficient evidence for the jury to determine that Cargill breached its duty of care.

Whether Cargill's failure to protect Cihon from harm was the proximate cause of his injury was also a jury question.  
Turner v. Roesner
, 193 Ill. App. 3d 482, 488, 549 N.E.2d 1287 (1990).  Proximate cause is one which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause.  
Cannon v. Commonwealth Edison Co.
, 250 Ill. App. 3d 379, 381, 621 N.E.2d 52 (1993).  In order to establish proximate cause, a plaintiff must demonstrate with reasonable certainty that the defendant's negligent acts caused his injuries.  
Cannon
, 250 Ill. App. 3d at 381. 

The jury here could have properly concluded that Cargill, which controlled the work area and knew of the plank, had reason to expect that Cihon would proceed to encounter the known or obvious danger "because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."  Restatement (Second) of Torts sec. 343A Comment f, at 220 (1965).  In other words, Cihon may have concluded that any risk in accessing the tank farm via the plank was outweighed by the perceived advantage of not having to walk eighty feet up to the north end of the tank farm and stepping over that shorter wall.  Cihon also may have determined that it was safer to walk on the plank and thereby avoid the water in the sump area which he considered dangerous to his use of the electric grinder.  We hold that Cihon presented sufficient evidence for the jury to find Cargill negligent; therefore, we reverse the trial court's judgment 
n.o.v.
 on the negligence count. 

Given our reversal of the judgment 
n.o.v.
 on this count, we now address Cihon's contention that the jury's finding that he was 35% comparatively negligent was not supported by the evidence.  A jury's determination on this issue will not be set aside on review unless the verdict is contrary to the manifest weight of the evidence.  
Shiner v. Friedman
, 161 Ill. App. 3d 73, 85, 513 N.E.2d 862 (1987).  A verdict cannot be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony or because the reviewing court would have reached a different conclusion.  
Ford v. City of Chicago
, 132 Ill. App. 3d 408, 412-13, 476 N.E.2d 1232 (1985).

The testimony here supported a finding of comparative negligence.  Cihon was required to use ordinary care for his own safety.  See Restatement (Second) of Torts sec. 343A, comment e, at 219 (1965).  He testified that it was his decision to walk down the unsecured plank while carrying materials.  The jury could consider the fact that Cihon had 29 years of experience as a construction worker, was familiar with unsecured planks being used in this manner, and yet elected to walk down the plank with an armful of materials.  Thus, the jury's finding of comparative negligence was not against the manifest weight of the evidence.

Cihon next contends that the trial court's judgment 
n.o.v.
 in favor of Cargill on the Structural Work Act count ignored the substantial evidence that the plank served as a scaffold under the Structural Work Act (Act) (740 ILCS 150/0.01 
et
 
seq
. (West 1994)).  In his memorandum and order on the judgment 
n.o.v.
, the trial judge determined that Cihon used the plank only as a means of going in and out of the tank farm and, therefore, its intended use at the time of the injury was not covered by the Act as a matter of law.  The judge found that Cihon had chosen to use the plank to access his work area even though he was free to enter over the shorter north wall of the tank farm. 

Section 1 of the Act provided in pertinent part:

"All scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances, erected or constructed *** for the use in the erection *** of any *** structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."  740 ILCS 150/1 (West 1994).

Whether a device is a "scaffold," "support," or other "mechanical device" governed by the Act is a matter of statutory construction and, therefore, a question of law for the court.  
Vuletich v. United States Steel Corp.
, 117 Ill. 2d 417, 421, 512 N.E.2d 1223 (1987).  In order to determine whether a device comes within the meaning of the Act, a court must ascertain the intended use of the device in question at the time of the injury, whether the injury has some connection with the hazardous nature of the device in question, and the element of danger involved in the use of the support device and whether it is the type of danger the legislature intended to alleviate by the Act.  
Ashley v. Osman & Associates, Inc.
, 114 Ill. App. 3d 293, 296-298, 448 N.E.2d 1011 (1983). 

A floor is not a "support" within the meaning of the Act when it is being used merely as a walkway, but if a worker relies on a partially completed floor for support in the performance of some hazardous activity or as a working platform, he may recover.  
Vuletich
, 117 Ill. 2d at 423.  In 
Monk v. Knierim
, 266 Ill. App. 3d 145, 639 N.E.2d 928 (1994), the plaintiff was handing insulation material to a coworker.  The plaintiff was standing next to an opening in the floor which was being used to move materials into the basement.  As he turned to get more insulation, his right foot slipped off an unsecured board covering part of the hole and he fell to the basement floor.  In reversing the trial court's entry of summary judgment in favor of the defendant, the reviewing court determined that, when handing insulation up to his coworker, the plaintiff used the floor as a support, but when going to get more insulation, he used the floor as a pathway.  
Monk
, 266 Ill. App. 3d at 151.  The court concluded that the floor was intended to be used as both a support and a pathway when the accident occurred and was, therefore, covered by the Act.  
Monk
, 266 Ill. App. 3d at 152.

In 
Ashley
, the plaintiff, who was carrying a propane tank to use in his work area, fell and was injured as he was walking on planks or concrete forms placed over deep mud at the work site.  The court concluded that the planks and concrete forms were erected as supports specifically intended to prevent the workmen from sinking into the mud as they transferred materials to the worksite and were, therefore, both a walkway and a support under the Act.  
Ashley
, 114 Ill. App. 3d at 299-300.  

Similarly Cihon was carrying materials into the tank farm in preparation for cad welding when he fell off of the plank.  We conclude that the evidence here supported the jury's verdict in favor of Cihon because, at the time of the injury, the plank was being used, not only as a pathway to the work area, but also to carry materials necessary for cad welding into the tank farm.  We reverse the finding that the plank served only as a walkway.  

The second element under 
Ashley
 is whether there was a connection between the injury and the hazardous nature of the support.  114 Ill. App. 3d at 298.  The evidence here indicated that the plank was 10 to 14 inches wide, was several feet above the ground, was unsecured, and had no guard rails.  Cihon testified that he was injured when the plank slipped or "tipped."  The evidence was sufficient to satisfy this criteria.

The third element under 
Ashley
 is whether the danger involved was intended to be covered by the Act.  The Act covered those instances when the worker was engaged in a hazardous task that was essential to the worker's structural work activities. See 
Dubrovich v. Commonwealth Edison Co.
, 209 Ill. App. 3d 498, 502, 568 N.E.2d 285 (1991).  In 
Dubrovich
, the court concluded that the Act applied to the plaintiff's injury which occurred while he was climbing a ladder and carrying nuts and bolts to a work area in order to weld whip restraints.  Similarly, we conclude that bringing cad welding materials into the tank farm was an integral part of Cihon's duties and was, therefore, covered by the Act.  

We conclude that Cihon proved the elements necessary to prevail under the Act.  See 
Cockrum v. Kajima International, Inc.
, 163 Ill. 2d 485, 491, 645 N.E.2d 917 (1994).  The record contains sufficient evidence for the jury to conclude that Cihon was involved in a structural activity, his activity was performed with reference to a structure under the Act, the plank was defective because it was not secure, and this defect caused Cihon to fall and become injured.  Moreover, Brady admitted that Cargill, which admittedly had charge of the work, was aware that the workers at the tank farm had been using the plank to access the tank farm.  The jury heard sufficient evidence to conclude that Cargill wilfully violated the Act.  Accordingly, we reverse the trial court's judgment 
n.o.v.
 on the Structural Work Act count. 

We note briefly that the trial judge failed to rule conditionally on Cargill's motion for a new trial as required under section 2-1202(f) of the Code of Civil Procedure (735 ILCS 5/2-1202(f) (West 1994)).  Under Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), this court may enter any judgment and make any order that ought to have been given or made by the trial court.  Our review of the record, as stated above, indicates that the jury's verdict in favor of Cihon on the negligence count and the Structural Work Act count was not against the manifest weight of the evidence.  Therefore, we deny Cargill's motion for a new trial.   Cargill argues in its cross-appeal that it is entitled to setoffs in the amount of the settlement proceeds paid to Cihon by M & W and Glen Oaks.  Cihon initially asserts that this argument must fail since Cargill failed to preserve this issue during the trial proceedings.  However, in 
Decker v. St. Mary's Hospital
, 266 Ill. App. 3d 523, 529, 639 N.E.2d 1003 (1994), the court determined that the issue of whether setoffs are appropriate should be raised no later than the post-trial motion stage.  Since Cargill presented this issue in its post-trial motion, the question was not waived. 

We hold that Cargill is entitled to a setoff of the M & W settlement as provided under section 2(c) of the Contribution Act (740 ILCS 100/2(c) (West 1994)), given the trial judge's good faith finding.  See 
Foster v. Kanuri
, 241 Ill. App. 3d 677, 608 N.E.2d 8 (1992).  Although the record indicates that the trial judge never made a good faith finding as to the settlement with Glen Oaks, we conclude that Cargill is entitled to a setoff in the amount of the value of its waived workers compensation lien.  Under 
Kotecki v. Cyclops Welding Corp.
, 146 Ill. 2d 155, 165, 585 N.E.2d 1023 (1991), Cargill may seek contribution from Glen Oaks in an amount not greater than its workers compensation liability.  As noted, Glen Oaks waived its lien in full.  The only basis for dismissal of a contribution claim by reason of a settlement with a plaintiff is provided under section (d) of the Contribution Act (740 ILCS 100/2(d) (West 1994)).  Therefore, since Glen Oaks settled with Cihon for the full amount of its potential contribution liability, we hold that the settlement was in good faith as a matter of law.

We now address appeal No. 1-96-269, concerning the trial court's finding of direct criminal contempt against Ambrose.  On appeal, Ambrose argues that the requisite elements of the offense of direct contempt were not proven beyond a reasonable doubt.  The judge found Ambrose in contempt after Cargill's counsel attempted to publish certain photographs to the jury.  Ambrose said he had never seen them.  The judge stated that Ambrose's associate had already stipulated to the photos.  After Ambrose repeatedly protested, the court found him in direct criminal contempt and fined him $250.  The judge's order stated that Ambrose had impeded the trial, diminished the dignity of the court, and displayed disrespect to the judge, parties, counsel, and the jurors.  

The standard of review for direct criminal contempt is whether there is sufficient evidence to support the finding of contempt and whether the judge considered only facts within his personal knowledge.  
People v. Graves
, 74 Ill. 2d 279, 284, 384 N.E.2d 1311 (1979).  This court is not persuaded that Ambrose's conduct was merely that of a vigorous advocate.  The judge stated on the record that "I have extenuated my patience with putting up with (Ambrose) interrupting me repeatedly when I have made rulings."  Our appellate court has stated:

"When *** the trial court has directly and clearly informed counsel that their opportunity for argument is over, that is a nondebatable order, and no misguided sense of advocacy can be permitted to overcome it.  If an attorney believes that the trial court's finding of fact or conclusions of law are in error, then that attorney can file a post-trial motion or appeal.  His options, however, do not include the privilege of interrupting the trial court as it states its findings or conclusions, nor do his options include the privilege of arguing with the court after its rulings have been made."  
In re Contempt of Ellis
, 206 Ill. App. 3d 388, 397, 564 N.E.2d 186 (1990).

We conclude that sufficient evidence existed for the judge to impose the $250 fine against Ambrose.  The report of proceedings reveals that some of Ambrose's behavior was in response to the manner in which he was treated by the judge.  We would be remiss in failing to observe that trial judge's are charged with the responsibility of maintaining order and decorum in the courtroom and should be patient, dignified and courteous in their interaction with attorneys appearing before them.  Nonetheless, we believe that Ambrose's actions were sufficient to support a finding of contempt.

For the foregoing reasons, we reverse the trial court's judgment 
n.o.v.
 as to both counts in appeal No. 1-96-1733.  We affirm the jury's finding that Cihon was 35% comparatively negligent on the negligence count.  We also hold that Cargill is entitled to setoffs in the amount of $417,122.06.  We remand with instructions to enter judgment on the jury's verdict and grant Cargill the setoffs to which it is entitled.  We affirm the trial court's finding of contempt in appeal No. 1-96-269.

Appeal No. 1-96-269--Affirmed.

Appeal No. 1-96-1733--Affirmed in part; reversed in part; remanded with instructions. 

HARTMAN, P.J., and SOUTH, J., concur.