ELLA DAWSON, Plaintiff-Appellant, v. ST. FRANCIS HOSPITAL *et al.*,
Defendants-Appellees.

First District (4th Division)   No. 87—0923

Opinion filed August 25, 1988.

352

Dennis E. Carlson, of Chicago, for appellant.

Chadwell & Kayser, Ltd., Cassiday, Schade & Gloor, and Johnson, Cusack & Bell, Ltd., all of Chicago (John J. Mustes, John R. Ostojic, Michael J. Gallagher, Michael G. Thomas, Dennis A. Ferraro, William V. Johnson, Robert L. Nora, and Thomas H. Fegan, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:
Plaintiff, Ella Dawson, filed a medical malpractice action against St. Francis Hospital and doctors Isaac Thapedi and Roy Lacey, seeking damages in connection with her disc surgery and post-operation infection. The trial court dismissed the complaint as to the doctors pursuant to Supreme Court Rule 103(b) (107 Ill. 2d R. 103(b)), for lack of diligent service, and granted summary judgment in favor of defendant hospital.

On appeal, plaintiff contends that she was not given a fair oppor-

tunity to be heard when the Supreme Court Rule 103(b) motions were decided; that the court abused its discretion in granting defendants' motions; and that the court further erred in refusing to allow her to file an amended complaint.

We affirm.

BACKGROUND

Plaintiff was admitted to St. Francis Hospital in Blue Island, Illinois, on June 4, 1981. Drs. Thapedi and Lacey operated on her back on June 15, 1981. On August 8, 1981, she was discharged from the hospital.

On June 14, 1983, one day before the two-year statute of limitations would have expired (using the date of surgery as the date of injury), plaintiff filed her complaint against defendants. Dr. Thapedi was not served until September 10, 1985. Dr. Lacey was served on December 6, 1985.[1]

Plaintiff attempted to serve Dr. Lacey on June 22, 1983, July 13, 1983, April 18, 1984, October 30, 1985, and November 8, 1985. Finally, 31 months after the suit was filed, she effected service on Dr. Lacey.

Plaintiff made five attempts in 28 months to serve Dr. Thapedi, twice in one month of 1983, once in April 1984, and twice in September 1985, including the successful attempt.

The record reveals that there were numerous continuances of defendants' motions to dismiss for lack of diligent service. Finally, the trial court entered an order setting December 5, 1986, as the final date for hearing on the motions to dismiss and the hospital's motion for summary judgment. This December 5 hearing date had been specially set on December 3, 1986, to accommodate plaintiff's attorney's trial schedule and was entered as an agreed order.

Plaintiff's counsel appeared briefly at the December 5 hearing, for the sole purpose of requesting another continuance because he was still on trial and was not prepared to defend against the motions. When the court declined to further delay the hearing, plaintiff's counsel left the courtroom.

After considering the record and papers filed, as well as the argument of defendants' attorneys, the trial court granted the doctors' motions to dismiss the suit on the ground that plaintiff had failed to exercise due diligence in effecting service. The court also entered

[1] Plaintiff contends that service was earlier effected by a previous process server who had failed to file his return and had failed to inform plaintiff of his service.

summary judgment in favor of the hospital, which had been timely served. The hospital had filed an uncontroverted affidavit regarding the adequacy of the medical care and had informed the court of plaintiff's failure to take any discovery from the hospital and her failure to obtain an expert.

Plaintiff moved to vacate the orders entered on December 5, 1986. On February 23, 1987, the court denied this motion. On March 24, 1987, plaintiff filed a second motion to vacate, this time requesting leaving to amend the complaint. On March 25, 1987, the court denied this motion also and plaintiff filed her timely notice of appeal.

OPINION

I

We first address the trial court's determination that plaintiff failed to exercise due diligence in serving Drs. Thapedi and Lacey. Plaintiff challenges this decision in two aspects: (1) she was denied due process because the trial court refused to continue the hearing despite her counsel's inability to attend and argue; and (2) the evidence establishes her diligence in attempting to effect process.[2]

■ The trial court's grant or denial of a continuance is, of necessity, highly discretionary. The court has the right and duty to control its own docket, while balancing the realities of busy trial counsel and conflicting schedules. In the pending case, plaintiff's attorney had requested several continuances before the December 5, 1986, final hearing date, as had defendants' counsel. The date for final hearing was reset from July 25, 1986, to August 20 to September 22 to October 20, 1986. Plaintiff again requested a continuance on October 20, and the hearing was then set for December 3, 1986. On December 3, plaintiff's counsel requested another continuance, on the grounds that he was involved in a long jury trial. To accommodate his schedule, the trial court agreed to schedule an early morning session, before plaintiff's counsel had to be in court on trial. The order entered on December 3, 1986, set the final hearing date as December 5, 1986, at 7:45 a.m., based on the court's belief that all counsel had agreed on that date and time. Plaintiff's regular counsel, who was not present on December 3, had sent another attorney to step up on his behalf. Plain-

---

[2]Plaintiff's brief on appeal lacks such fundamental elements as citations to the record and a table of contents of the record on appeal. All three defendants urge this court to dismiss the appeal on that basis. While we decline to do so, we remind appellant's counsel of the extra and unwarranted burden imposed on this court by his failure to follow the applicable supreme court rules.

tiff's counsel later argued that the other attorney did not agree to that date and filed an affidavit to that effect.

On the morning of December 5, 1986, the court and defense counsel waited until 8 a.m. for plaintiff's counsel to appear. They began to argue the pending motions. Plaintiff's attorney then entered the courtroom and asked for yet another continuance because he was at a critical point in his trial and was not prepared to argue. The court declined to delay the hearing and plaintiff's attorney left. The court considered the evidence and argument of defendants' attorneys and granted their respective motions.

Plaintiff's apparent contention that she was denied due process by the court's refusal to grant a continuance to the end of her attorney's trial so that she could argue against the motions is not clearly articulated. Her brief alludes to this issue in charging that the court based its decision on an insufficient record and that she would have supplemented her written response to the motions with testimony.

■ Under the circumstances of this case, we cannot find that the court's denial of another continuance was an abuse of discretion. Nor do we find that plaintiff was deprived of due process, the essence of which is notice and the opportunity to be heard. Plaintiff had both. Despite argument to the contrary, plaintiff's attorney could have defended against the motions on December 5, 1985, which were set to be heard an hour and 15 minutes before he was due in court on trial. His decision not to do so was a risk entirely attributable to him. While we are aware of the pressures facing an attorney who is on trial, in this case plaintiff's attorney was given ample time to prepare his defense of the motions in the months in which they were pending. He had sought and received several continuances previously, allowing him to schedule adequate time to handle the motions. We do not find that he was unfairly denied another continuance on December 5, especially since the court had specifically set that date in response to his December 3 request for additional delay. He sent another attorney in his stead to the December 3 conference at his peril; it is no excuse to then complain that the attorney did not agree to the time and date set as an accommodation to him.

We conclude that the absence of plaintiff's counsel from the December 5 hearing did not undercut the validity of the court's rulings on that date and did not deny plaintiff due process.

We further find that the facts in evidence and the law support the trial court's decision on the merits of the motions.

■ Rule 103(b) provides that if "the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the appli-

cable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice ***." 107 Ill. 2d R. 103(b).

Motions to dismiss under this rule are addressed to the sound discretion of the trial court. (*Mares v. Metzler* (1980), 87 Ill. App. 3d 881, 409 N.E.2d 447.) The plaintiff has the burden of proving that she has exercised reasonable diligence in obtaining service. *Piscitello v. Barton* (1978), 66 Ill. App. 3d 451, 384 N.E.2d 47.

The determination of what constitutes reasonable diligence under Supreme Court Rule 103(b) has been addressed by the courts, which use an objective standard. (*Connaughton v. Burke* (1977), 46 Ill. App. 3d 602, 361 N.E.2d 87.) The factors used in determining diligence are length of delay in service; plaintiff's activities; plaintiff's knowledge of defendant's location; ease with which defendant's whereabouts could be ascertained; defendant's actual knowledge of the pending action; and special circumstances which could affect the plaintiff's efforts. *Connaughton v. Burke*, 46 Ill. App. 3d 602, 361 N.E.2d 87. See *Semersky v. West* (1988), 166 Ill. App. 3d 637, 520 N.E.2d 71 (dismissal affirmed where complaint filed on day that limitations period would have expired and defendants served nine months later); *Montero v. University of Illinois Hospital* (1978), 57 Ill. App. 3d 206, 372 N.E.2d 1010 (13 months of idle activity on the part of plaintiff was lack of diligence sufficient to dismiss complaint).

Defendant Lacey filed affidavits stating that his office address had appeared in the yellow pages of the telephone directory since 1979 and that his office was open on the dates of the purported services. Dr. Lacey's home address had remained the same since 1982. There was no evidence that he knew of the pending action, nor were there any special circumstances which would have adversely affected the plaintiff's efforts. It nevertheless took plaintiff 31 months to effect service on Dr. Lacey.

■ Based on the facts in evidence and the relevant legal factors, the trial court concluded that Dr. Lacey's motion to dismiss pursuant to Supreme Court Rule 103(b) should be granted. We agree. See *Lee v. Decker* (1974), 17 Ill. App. 3d 93, 307 N.E.2d 773 (complaint filed on last day before statute of limitations ran was dismissed after 42 months, delay from date of injury to service and defendant's address was listed on police report and telephone directory); *Luebbing v. Copely Memorial Hospital* (1978), 60 Ill. App. 3d 780, 377 N.E.2d 345 (dismissal affirmed after 10-month delay in effecting service, where

defendants' addresses were easily discoverable).

Defendant Thapedi stood in essentially the same position as Dr. Lacey, since his location was also listed in the telephone directory and there were no circumstances advanced to explain why he was not served earlier, either.

Plaintiff's assertion that she would have supplemented her written response with live testimony or other evidence does not comport with motion practice and cannot be used as a basis for disturbing the court's ruling on the Rule 103(b) motions. Although she maintains that the doctors were served in June of 1984 by a previous process server who had failed to inform anyone of the service, the affidavit to that effect does not establish that service was in fact had, since there was no written return filed at the time. Moreover, evidence of a first service would not excuse her lack of diligence in obtaining either the first (12 months after the complaint was filed) or the second (more than another year later). See *Muskat v. Sternberg* (1988), 122 Ill. 2d 41, 521 N.E.2d 932.

■ Plaintiff also charges that defendants mischaracterized the record to the trial court during the hearing, but fails to cite specifics in the record to support her charge. Her statement that "the court is duty bound to take judicial notice" of the record ignores her role as an advocate with the burden of persuading the court that her position is stronger than defendants'. Her counsel's absence from the hearing and his failure to provide the court with whatever evidence and arguments he felt were relevant cannot now be turned into a reason for our reversal of the court's considered ruling.

■ We further decline to reverse the trial court's grant of the hospital's motion for summary judgment. The record indicates that, while plaintiff was given leave to file her response to the motion, she failed to do so. The motion, affidavits, and attached exhibits therefore were uncontested at the hearing. It was not until the motion for reconsideration that she challenged the adequacy of the nurse's affidavit concerning the standard of medical care that plaintiff was given while in the hospital. Section 2—1005(c) of the Code of Civil Procedure provides that the party opposing summary judgment may file counteraffidavits "prior to or at the time of the hearing." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Plaintiff did not file a response to the motion, a motion to strike the affidavit, or any other paper that might have preserved her arguments. Nor did her attorney advise the court of any challenges he wished to make to the motion for summary judgment before he left the courtroom on the hearing date.

Moreover, plaintiff's attorney failed to notify the hospital of any

expert witness he intended to call, which would have been a necessary element of his cause of action for medical malpractice. (See *Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 394 N.E.2d 559 (summary judgment in medical malpractice case properly granted where plaintiff has ample opportunity to obtain an expert and fails to either do so or indicate expectation of doing so); *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166, 392 N.E.2d 203.) Had he retained an expert by that point, he likely could have obtained a continuance of the motion for summary judgment on that basis.[3] In the alternative, he could have filed an affidavit pursuant to Supreme Court Rule 191(b) (107 Ill. 2d R. 191(b)), if he believed that material facts were not before the court and he needed additional time to take discovery on that basis. See *Rush v. Simon & Mazian, Inc.* (1987), 159 Ill. App. 3d 1081, 513 N.E.2d 100.

II

Plaintiff also alleges that the trial court erred in refusing to allow her to file an amended complaint. The amendment purportedly would have taken her out of the two-year statute of limitations period that the defendants believed expired the day after she filed her complaint. She would have asserted facts regarding her discovery of the defendants' alleged negligence, which would have tolled the limitations period. Presumably, this would strengthen her argument that she exercised due diligence in serving defendants.

■ Initially, we note that the motion for leave to file the amendment was made after the motions disposing of the lawsuit as to the three defendants were granted and then reaffirmed upon denial of the motion for reconsideration. She did not request leave to amend in a timely fashion. (*Folkers v. Drott Manufacturing Co.* (1987), 152 Ill. App. 3d 58, 504 N.E.2d 132 (once final judgment or order on motion is entered, there is no right to amend for purposes other than to conform the evidence to the pleadings); see *Pickle v. Curns* (1982), 106

---

[3]Plaintiff argues that she could have voluntarily dismissed her lawsuit and refiled it, thereby avoiding the effect of Rule 103(b), had the Illinois Supreme Court not changed existing law in *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322. She contends that *O'Connell* unconstitutionally abridged plaintiffs' absolute right to nonsuit their actions under section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009). Such an argument was rejected in *Muskat v. Sternberg* (1988), 122 Ill. 2d 41, 521 N.E.2d 932, which held that retroactive application of the *O'Connell* ruling was proper. The *Muskat* court further noted that the holding in *O'Connell* was not a clear change in the law. Moreover, plaintiff did not request the court to allow her to voluntarily dismiss her action, making this argument speculative at best.

Ill. App. 3d 734, 435 N.E.2d 877 (motion to file amended complaint is not encompassed within statutory provision listing permissible post-judgment motions).) Accordingly, the trial court properly denied her request.

Moreover, it is highly doubtful that the amendment would have aided her on the diligence issue, since the Rule 103(b) motions were premised on the total time span and lack of activity that occurred from the time that the complaint was filed, which was almost two years after the surgery, to effective service approximately two years later. Even if the discovery of post-operation negligence meant that the two-year period did not start to run until some months after the June 15, 1981, surgery date, she still did not exercise due diligence in effecting service. (See *Luebbing v. Copely Memorial Hospital* (1978), 60 Ill. App. 3d 780, 377 N.E.2d 345.) There seems to be little question that the statute of limitations, tolled for a few months or not, would have expired before service was effected anyway. Accordingly, we find that the trial court properly denied her leave to file the amended complaint on that basis as well.

For the foregoing reasons, we affirm the trial court.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.