21 March 2000

NO. 4-99-0293

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

ERIC HUTCHCRAFT, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

) Macon County

INDEPENDENT MECHANICAL INDUSTRIES, ) Nos. 96L183

INC.; BEN HUR CONSTRUCTION COMPANY; and )     96L77

PPG INDUSTRIES, INC., )

Defendants-Appellees, )

and )

BEN HUR CONSTRUCTION COMPANY and PPG )

INDUSTRIES, INC., )

Third-Party Plaintiffs, )

 ) Honorable

A.C. LEDBETTER, INC., ) Scott B. Diamond,

Third-Party Defendant. ) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the 

court:

In February 1995, plaintiff, Eric Hutchcraft, was electrically shocked while working at a manufacturing plant construction site of PPG Industries, Inc. (PPG).  Plaintiff brought an action against defendants Independent Mechanical Industries (Independent Mechanical) and Ben Hur Construction Company (Ben Hur) alleging negligent operation, placement, and inspection of welding units and welding lead lines at the site.  Plaintiff also sued PPG, the facility owner, for failing to control the project and ensure a safe work environment.

Each defendant moved for summary judgment.  The circuit court granted the motions in a docket order, ruling that plain

tiff could not establish causation in fact based upon "surmise or conjecture as to the injury's cause."  We affirm in part and reverse in part.    

I.  BACKGROUND

Plaintiff worked as a laborer for A.C. Ledbetter, Inc. (Ledbetter).  Ledbetter was retained by PPG as the general contractor for a multi-million-dollar construction project to repair a glass furnace and tin bath at PPG's Mt. Zion, Illinois, plant.  Ben Hur was working as the concrete subcontractor on the project.  Independent Mechanical was a mechanical subcontractor. 

The construction site contained a number of welding units placed at various locations in the facility.  The units are basically stationary, with long connecting power cords called "leads" that run from the unit to the working end where a weld can be executed.  The leads can be interconnected to form a long extension from the unit to the working end.    

At a large construction project like the one at PPG, numerous welding leads are draped through the site.  David Allie, Ledbetter's on-site safety person, referred to the leads as a "snake pit" in certain areas.  He said they were tripping hazards and that one contractor's lead might be plugged into another contractor's welding unit.  At times, workers complained because one worker would go on a coffee break and return to find his welding lead unplugged and being used somewhere else by a differ

ent contractor.

The record indicates that in the basement area where plaintiff was working, one welding unit and numerous leads were in use.  Apparently, some of the leads were connected to welding units on upper levels, and the leads were draped throughout the basement.      

On the day of the accident, plaintiff was performing general cleanup at the construction site.  He was instructed to pick up scrap metal, boards, pieces of scaffolding, and anything else that seemed out of place.  After completing the exterior cleanup work, plaintiff moved to the basement of the project area to continue cleaning.  Plaintiff and his coworker, Catherine McCullough, were both cleaning up the basement area.  They were piling the debris so that it could be removed from the basement.  Robert Watkins, another Ledbetter employee, was passing through the basement area on his tow motor, assisting Ledbetter bricklay

ers. 

The basement floor was concrete but was partially covered in a pool of water.  The water entered the basement because part of the roof was removed during the project.  McCullough was working in the dry portion of basement, but plaintiff was picking up debris while standing in water that covered his shoes.  As plaintiff attempted to lift a large piece of tin, he received an electric shock.  Plaintiff blacked out and recalls awakening in a Ledbetter safety trailer at the project site.  He was subsequently taken to the emergency room at the PPG plant and then to St. Mary's Hospital in Decatur, Illinois.

Robert Watkins arrived at the scene shortly after plaintiff was shocked.  He testified that the welding unit in the basement was sitting on top of the lead.  The protective insula

tion of the lead was destroyed, and the lead was nearly severed into two pieces.  The individuals surveying the scene after the incident asked him to use his tow motor to lift the unit so that the defective lead could be removed.  He refused (fearing elec

tric shock) and went back to work in another section of the site.   Ultimately, Ledbetter's project manager, Clinton White, retrieved the subject welding lead and took it to Ledbetter's safety trailer on the jobsite.  It remained in the trailer until the job was complete, at which time it was shipped back to Ledbetter's home office in Toledo, Ohio.  

The welding unit itself was not marked as being prop

erty of either Ben Hur or Independent Mechanical.  The day after the accident, another Ledbetter laborer went to the basement where plaintiff was injured and obtained the serial number and manufacturer of the unit.  Despite this information, plaintiff was not able to determine who owned the welding unit.  Plaintiff was also not aware of who was using the welding unit at the time of the incident.  Based upon plaintiff's lack of information, defendants moved for and obtained summary judgment.  See 
Yager v. Illinois Bell Telephone Co.
, 281 Ill. App. 3d 903, 909, 667 N.E.2d 1088, 1093 (1996) (reversing jury verdict for plaintiff, noting that liability cannot be premised upon surmise or conjec

ture as to the injury's cause).  
 

II. ANALYSIS

A. Review of Circuit Court's Decision Allowing Defendants  

To File Untimely Motions for Summary Judgment 

 

As a threshold matter, plaintiff argues that the circuit court abused its discretion when it allowed defendants to file their motions for summary judgment outside the time period set forth in the case management order.  We disagree.  The court has the right and duty to control its own docket.  
Dawson v. St. Francis Hospital
, 174 Ill. App. 3d 351, 354, 528 N.E.2d 362, 364 (1988).  Further, the court is vested with wide discretion in granting or denying extensions of time to file pleadings or motions.  See 735 ILCS 5/2-1007 (West 1998); 134 Ill. 2d R. 183.   The circuit court had discretion to permit defendants to file their summary judgment motions after the time prescribed by the case management order. 

B. Summary Judgment

Summary judgment is proper only where the pleadings, depositions, and admissions on file, together with the affida

vits, if any, show that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998).  A defendant who moves for summary judgment may meet its initial burden of production in two ways.  See 4 R. Michael, Illinois Practice §40.3, at 271-72 (1989) (Civil Procedure Before Trial).  The first is similar to the way a plaintiff would establish his right to summary judg

ment:  by affirmatively showing that some element of the case must be resolved in defendant's favor.  A defendant who uses that method is required to prove something it would not be required to prove at trial; at trial, the burden would be on plaintiff to prove the element, not on defendant to disprove it.  

The second method was recognized in 
Celotex Corp. v. Catrett
, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 275, 106 S. Ct. 2548, 2553-54 (1986).  In that case, Celotex, the movant, could not prove that its products were not the cause of plaintiff's injuries.  Celotex was nevertheless entitled to summary judgment because plaintiff, who had the burden of proof, likewise could not produce any evidence that a Celotex product was involved.  
Celotex
 held that the defendant satisfies its initial burden of production when it "point[s] out" the absence of evidence sup

porting the plaintiff's position.  
Celotex
, 477 U.S. at 325, 91 L. Ed. 2d at 275, 106 S. Ct. at 2554.  

The Illinois cases may require the defendant to do more than "point out" the absence of evidence.  See 4 R. Michael, Illinois Practice §40.3, at 272 (1989) (Civil Procedure Before Trial) ("may not be done by a mere recital in the defendant's affidavit to this effect").  In 
Kimbrough v. Jewel Cos.
, 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331 (1981), for example, defendant was able to produce a deposition of plaintiff in which plaintiff stated she did not know why she fell, and answers to interrogatories in which plaintiff stated there were no other known eyewitnesses.  

Defendant's burden is certainly reduced in a 
Celotex
-type motion.  A 
Celotex
-type motion presents the rare situation of a motion for summary judgment where the burden of proof is essentially on the nonmovant.  In either case, 
Celotex
-type motion or traditional motion, once defendant has satisfied its initial burden of production, the burden shifts to plaintiff to present some factual basis that would arguably entitle her to a judgment under the applicable law.  
Kimbrough
, 92 Ill. App. 3d at 819, 416 N.E.2d at 333 (
Celotex
-type motion).

C. Review of Summary Judgment for Ben Hur and 

Independent Mechanical

Defendants Ben Hur and Independent Mechanical filed 
Celotex
-type motions for summary judgment, arguing that plaintiff could not establish who owned or who was using the welding unit and lead at the time of the accident.   

Plaintiff's allegations of negligence against Ben Hur and Independent Mechanical are identical and relate to the operation, placement, and inspection of welding units and lead lines.  Plaintiff alleges that defendants were negligent in operating welding leads with defective insulation, allowing the leads to lay in water at the construction site and failing to inspect the leads before using them.  

Evidence of ownership and/or use of the welder and lead is critical to plaintiff's case against Ben Hur and Independent Mechanical.  Without any evidence on those issues, plaintiff would be hard pressed to establish duty, breach, or causation for purposes of his negligence action.  

Discovery was taken on the issues of ownership and use of the welding unit and lead.  For the most part, the individuals deposed did not know who was using the welding unit and lead and could not identify the owner of the welding unit or lead.  Plaintiff, himself, could not identify the user or owner of the welding unit or lead.  To the best of his knowledge, the lead was Independent Mechanical's because all the welders he saw were Independent Mechanical employees.  Clinton White, Ledbetter's project manager, had no information to conclusively establish either ownership or use of the unit or lead.  The same was true for Catherine McCullough (Ledbetter laborer), James Schueler (Ledbetter vice president of operations), Mark Briggs (safety coordinator), Leslie Reed (safety coordinator).  

The only testimony relating to ownership and use of the welding unit and lead came from Robert Watkins (Ledbetter la

borer), David Allie (Ledbetter's on-site safety person) and Clinton White (Ledbetter project manager).  Watkins testified that the welding unit was owned by Ben Hur and that Independent employees were using it at the time of the accident.  Allie also stated that it was Ben Hur's welding unit, but was not able to identify the owner of the lead.  White testified that the lead had blue marking on it and that Ben Hur's identifying color was blue.

A plaintiff does not make out a preponderant case against either of two defendants by showing merely that he has been injured by the negligence of one or the other.  W. Keeton, Prosser and Keeton on Torts §39, at 251 (5
th ed. 1984).  Plain

tiff must show causation.  Cause in fact is established when a reasonable certainty exists that the defendant's acts caused the injury.  
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 455, 605 N.E.2d 493, 502 (1992).  In the docket order granting summary judgment, the circuit court relied upon 
Yager
, where we held that judgment against plaintiff is required where unanswered fact questions force the fact finder to "presume, speculate, and infer answers far beyond the scope of 'reasonable certainty' required to establish cause in fact."  
Yager
, 281 Ill. App. 3d at 909, 667 N.E.2d at 1093.  

In 
Yager
, neither party presented evidence of key facts relating to causation.  We ruled that without such evidence, "the mere possibility that a defendant's conduct has caused an injury becomes so slight that it may be disregarded as a matter of law."  
Yager
, 281 Ill. App. 3d at 909, 667 N.E.2d at 1093. 

Unlike 
Yager
, Hutchcraft has produced fact witness testimony regarding the key issues of ownership and use of the welding unit and lead.  Although the testimony regarding owner

ship and use is limited, it is not conclusively contradicted by anything else in the record.  Defendants Ben Hur and Independent Mechanical alluded to the fact that they would have defenses to these issues if the case were tried, but they have not come forward with information refuting the testimony of Watkins, Allie, or White.  

We recognize that in a 
Celotex
-type motion, defendants rely on the absence of proof in seeking summary judgment; they do not bring forth affirmative matters.  However, based upon the record before us, Watkins', White's, and Allie's testimony presents fact questions as to ownership and use of the welder and lead, a critical issue.  Whether plaintiff can ultimately estab

lish these facts, plus duty, breach, causation, and harm by a preponderance of the evidence is far from certain.  However, based upon the disputed facts in the record, these issues cannot be decided as a matter of law.  At the summary judgment stage, plaintiff is not required to prove his case.      

Summary judgment is a drastic remedy that should be granted only where the movant's right to it is clear and free of doubt.  
Sutton v. Washington Rubber Parts & Supply Co.
, 176 Ill. App. 3d 85, 88, 530 N.E.2d 1055, 1057 (1988).  If the facts in the record present more than one conclusion or inference, includ

ing one unfavorable to the movant, summary judgment should be denied.  
Sutton
, 176 Ill. App. 3d at 88, 530 N.E.2d at 1057.  Based upon our review of the record, we cannot agree with the circuit court that no material issues of fact are in dispute regarding ownership and use of the welder and lead at the PPG project where plaintiff was injured.  The facts present more than one conclusion or inference regarding ownership and use.  There

fore, the grant of summary judgment as to Ben Hur and Independent Mechanical is reversed.    

D. Review of PPG's Summary Judgment
 

Plaintiff's claim against PPG is premised upon the theory that as the property owner, PPG "controlled" the construc

tion project and had a duty to ensure a safe work environment for the employees of the general contractor and subcontractors.  Where an employee of an independent contractor bases a negligence claim against an owner on a failure to exercise proper control, a duty arises only where the owner has retained control for the work.  
Steuri v. Prudential Insurance Co. of America
, 282 Ill. App. 3d 753, 763, 668 N.E.2d 1066, 1072 (1996).  The existence of a duty is a question of law and must be decided in the first instance by the circuit court.  
Gardner v. Navistar International Transportation Corp.
, 213 Ill. App. 3d 242, 250, 571 N.E.2d 1107, 1112 (1991).  If no duty exists, then summary judgment is proper.  
Puttman v. May Excavating Co.
, 118 Ill. 2d 107, 116, 514 N.E.2d 188, 192 (1987).  Plaintiff's complaint alleges that in February 1995, PPG had the authority to:

"a. Stop the work of the contractors[;]

b. Change the work of the contractors[;]

c. Enforce[] safety regulations and rules, includ

ing [Occupational Safety and Health Administration (OSHA)] regulations as to the work of the contrac

tors[;]

d. Inspect[] the work in progress of the contrac

tors to determine if the work was performed safely[; and]

e. Coordinate[] the work of the contractors."

Plaintiff further alleged that PPG was negligent because it allowed the contractors to use defective lead lines, allowed the lead lines to lay in water, and failed to inspect the lead lines.

Plaintiff's negligence claim against PPG is based on section 414 of the Restatement (Second) of Torts, which provides:

"One who entrusts work to an independent con-

tractor, but who retains the control of any 

part of the work, is subject to liability for 

physical harm to others for whose safety the 

employer owes a duty to exercise reasonable 

care, which is caused by his failure to exer-

cise his control with reasonable care."  

Restatement (Second) of Torts §414, at 387 

(1965). 

Comment 
c
 to section 414 expounds upon this rule and states:

"In order for the rule stated in this 

Section to apply, the employer must have re-

tained at least some degree of control over 

the manner in which the work is done.  It is 

not enough that he has merely a general right 

to order the work stopped or resumed, to in-

spect its progress or to receive reports, to 

make suggestions or recommendations which 

need not necessarily be followed, or to pre-

scribe alterations and deviations.  Such a 

general right is usually reserved to employers, 

but it does not mean that the contractor is 

controlled as to his methods of work, or as 

to operative detail.  There must be such a 

retention of a right of supervision that the 

contractor is not entirely free to do the 

work in his own way."  Restatement (Second) 

of Torts §414, Comment 
c
, at 388 (1965).

PPG filed a 
Celotex
-type motion for summary judgment, arguing that plaintiff is unable to establish facts showing that PPG controlled the project.  On appeal, plaintiff urges us to broadly interpret the definition of "control" for purposes of section 414.  Plaintiff relies upon the testimony of David Allie, Ledbetter's on-site safety coordinator, to raise a material issue of fact as to PPG's control over the project.  However, Allie's testimony that referred to PPG as the "project manager" and noted that PPG "watched" the jobsite and had its own trailer could not justify a finding of "control" as defined in the Restatement.

The fact that PPG had a trailer on-site and could coordinate with the general contractor and stop or change the work on the project is not enough to find that PPG had control.  Further, having the ability to inspect the work and enforce safety regulations does not constitute control as applied to this case.  
Fris v. Personal Products Co.
, 255 Ill. App. 3d 916, 924, 627 N.E.2d 1265, 1270 (1994) (reversing judgment for plaintiff on issue of control where owner retained right to make sure safety precautions were observed and that work was done in safe manner); but see 
Fancher v. Central Illinois Public Service Co.
, 279 Ill. App. 3d 530, 538-39, 664 N.E.2d 692, 697-98 (1996) (reversing dismissal of complaint where owner required independent contrac

tor to utilize method of removing fly ash from owner's silo that was more dangerous and different from contractor's normal method).  The record in this case more closely resembles that in 
Fris
 than 
Fancher
.     

The undisputed facts here indicate that Ledbetter retained David Allie and Reed Environmental Services to provide safety oversight for the project.  Further, unlike 
Fancher
, plaintiff testified that no one at PPG told him how to perform his job duties.  Even assuming that PPG retained the right to require that work be done in a safe manner, such a general authority would not impose a duty upon it to inspect each welding unit and lead to insure its proper placement at the jobsite.  That is an incidental activity related to the project and based upon the record, not one that PPG was involved with or controlled.  We agree with the circuit court and find no genuine issue of material fact in dispute concerning PPG's control of the project.  PPG did not retain control of the work or safety issues for purposes of section 414.  Thus, no duty arose and PPG is entitled to judgment as a matter of law.      

III. CONCLUSION

We affirm the circuit court's decision permitting defendants to file untimely summary judgment motions.  We also affirm summary judgment in favor of PPG.  However, we reverse summary judgment as to Ben Hur and Independent Mechanical and remand for further proceedings consistent with this opinion.  

Affirmed in part and reversed in part; cause remanded.

KNECHT, J., concurs.

MYERSCOUGH, J., specially concurs in part and dissents in part.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I specially concur in part and dissent in part.  I concur in the reversal of summary judgment as to Independent Mechanical and Ben Hur.  I respectfully dissent in the affirmance of summary judgment as to PPG. 

David Allie's testimony does raise a material issue of fact as to PPG's control over the project.  PPG's status as project manager, regularly watching and supervising the jobsite and maintaining a trailer on the site, illustrate a degree of control over the project.  No evidence has been presented to refute Allie's testimony to this effect.  The degree of control maintained remains a genuine issue of material fact when the evidence is viewed in the light most favorable to the plaintiff.

The trial court's award of summary judgment as to PPG should be reversed.